THE STATE BOARD OF EQUALIZATION AND NEVADA TAX COMMISSION, ADMINISTRATIVE AGENCIES OF THE STATE OF NEVADA; JACK J. HUNTER, JR., CHAIRMAN, WILLIAM E. MOONEY, ROBBINS E. CAHILL, FRANCES F. MARTIN, W. HOWARD WINN, IRA H. KENT, SEBASTIAN S. MIKULICH, JEROME D. MACK AND RUBY DALTON, AS MEMBERS OF SAID BOARD AND COMMISSION, APPELLANTS, *v.* SIERRA PACIFIC POWER COMPANY, A NEVADA CORPORATION, RESPONDENT.

No. 12033

October 16, 1981                                    634 P.2d 461

*Richard H. Bryan,* Attorney General, *Timothy Hay* and *Tudor Chirila,* Deputy Attorneys General, Carson City, for Appellants.

*Calvin R. X. Dunlap,* District Attorney, Washoe County, for Washoe County Amicus Curiae.

*Lionel Sawyer & Collins, Richard G. Campbell, Charles H. McCrea, Jr.* and *Mary K. Pickering,* for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

This appeal is focused upon the method used by appellant, the State Board of Equalization, in assessing the value of the property of respondent Sierra Pacific Power Company (hereinafter referred to as "Sierra"). The district court in passing on the ruling of the Board held in its judgment below that the Board had failed to follow the notice and hearing requirements of the Nevada Administrative Procedure Act, and, therefore, that the Board's ruling was invalid. We agree. The district court went further and also ordered the Board to direct the tax receiver of eleven counties to refund to Sierra the taxes collected under the formulae.[1] The counties have filed an amicus brief challenging that part of the lower court's judgment, principally on the grounds that the counties were never made a party to these proceedings. We agree and reverse that part of the judgment below.

### STATEMENT OF THE FACTS

By its decision of March 4, 1975, the Nevada State Board of Equalization, upon recommendation of the Tax Commission (both hereinafter referred to individually and collectively as "Commission"), amended the formulae for assessing the taxable value of property held by Sierra. Commission uses three different historical assessment methods to determine the property value of Sierra: (1) the cost indicator approach; (2) the income indicator approach; and (3) the stock-debt indicator

---

[1]In its petition for judicial review in the district court of the assessment formulae, Sierra did not seek a refund from the counties.

method. By its March 4 decision, Commission amended important characteristics of each of the three respective approaches: (1) in calculating the book cost indicator of value, contributions in aid of construction were no longer to be offset, but included in book value; (2) a flow-through method of accounting was utilized rather than a normalization method; and (3) the present worth of leased properties was to be included in calculating the stock-debt indicator of value. These changes resulted in a $1,792,000.00 increase in the valuation of Sierra's property; accordingly, Sierra was liable for an increased tax liability of $74,611.07. Commission admitted the amendments were made without the adoption of written rules or regulations, and that the notice and hearing provisions of the Administrative Procedure Act applicable to regulation amendment, NRS 233B.060, were not followed.

In the district court Sierra appealed the decision of Commission on the ground that its failure to follow the provisions of the Nevada Administrative Procedure Act invalidated the regulations. The district court agreed by finding that the assessment formulae were regulations within the meaning of the Administrative Procedure Act; therefore, in order to amend them, Commission had to comply with the hearing and notice requirements of the Administrative Procedure Act. On account of the failure to follow these procedures, the district court invalidated the regulations and ordered Commission to require the counties' tax receivers to refund the overpaid taxes; Commission appeals.

## THE ADMINISTRATIVE PROCEDURE ACT

NRS 361.320 requires that the property owned by Sierra be centrally assessed by Commission for taxation purposes. In order to carry out this duty, the legislature requires Commission to adopt formulae providing the methods utilized to determine the full cash value of Sierra's property. NRS 361.320(5).[2] Appellants contend that the requirements of the Administrative Procedure Act for amending regulations do not pertain to these formulae: (1) the terms "rule" or "regulation" are not contained in NRS 361.320(5); (2) in order to be effective, the appraiser must be at liberty to change techniques without being subject to the confines of the notice and hearing requirements of NRS 233B.060. We do not agree.

---

[2]NRS 361.320(5) states:

The Nevada tax commission shall adopt formulas, and cause them to be incorporated in its records, providing the method or methods pursued in fixing and establishing the full cash value of all franchises and property assessed by it. The formulas shall be adopted and may

1. For the purposes of the Administrative Procedure Act, regulation is defined in NRS 233B.038; the pertinent portion provides:

> *"Regulation" defined.* "Regulation" means an agency rule, standard, directive or statement of general applicability which effectuates or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes a proposed regulation and the amendment or repeal of a prior regulation.

The title placed upon an administrative pronouncement does not determine whether or not the agency is engaging in rule making. *Cf.* United Parcel Serv., Inc. v. Oregon Transp. Com'n, 555 P.2d 778 (Or.App. 1976).

A number of courts have struggled with the concept of rule or regulation in administrative law. "A properly adopted substantive rule establishes a standard of conduct which has the force of law. In subsequent administrative proceedings involving a substantive rule, the issues are whether the adjudicated facts conform to the rule." Pacific Gas & Electric Co. v. Federal Power Com'n, 506 F.2d 33, 38 (D.C.Cir. 1974). The Oregon Supreme Court, in Morgan v. Stimson Lumber Co., 607 P.2d 150, 154 (Ore. 1980), interpreted administrative rule making under a statute similar to ours:

> Thus agency rule making may be the means prescribed by the legislature for regulating an area of activity, setting rates, standards, requirements, or procedures . . . . An agency makes a rule, within the broad meaning of that term, when it does nothing more than publish its official position on how it interprets a requirement, standard, or procedure already provided in the governing statute itself, and how it proposes to administer this statutory provision.

Despite the contentions of appellants that devising assessment formulae is not the adoption of regulations, the plain language of NRS 233B.040(1) leads us to conclude otherwise: "To the extent authorized by the statutes applicable to it, each agency may adopt reasonable regulations to aid it in carrying out the

---

be changed from time to time upon its own motion or when made necessary by judicial decisions, but the formulas shall in any event show all the elements of value considered by the Nevada tax commission in arriving at and fixing the value for any class of property assessed by it.

functions assigned to it by law and *shall* adopt such regulations as are necessary to the proper execution of those functions.'' (Emphasis added.)

When Commission promulgates formulae for determining the value of Sierra's property, it does so at the express direction of the legislature. NRS 361.320(5). These formulae are utilized in subsequent assessment proceedings to determine the taxable value of Sierra's property. These formulae represent the official position of Commission on how the property of Sierra will be assessed, and are pronouncements of what methods of assessment will be utilized. The formulae are in fact regulations promulgated by Commission at the express direction of the legislature in order for Commission to carry out its duty of assessing and taxing Sierra's property. Therefore, the failure to follow the notice and hearing requirements of NRS 233B.060 invalidates the assessment formulae amendments promulgated by Commission. Gibbens Co. v. Archie, 92 Nev. 234, 548 P.2d 1366 (1976).

2. We find no merit in appellants' contention that appraisers must be at liberty to change assessment formulae at will. Commission is free to amend its regulations; it need only follow the provisions of NRS 233B.060 which are meant ''to establish minimum procedural requirements governing the regulation-making process of state agencies.'' Gibbens Co. v. Archie, *supra,* 235.

## THE JUDGMENT AGAINST THE COUNTIES

In its petition for review of the Commission's amended formulae, Sierra did not name the counties as parties, although Sierra did allege that it was aggrieved by an overpayment of taxes because of the improperly amended formulae. The lower court ordered the State Board of Equalization to direct the tax receivers of the counties to refund the overpaid taxes to Sierra. Because the eleven counties were not before the district court, we have determined that this part of the lower court's judgment does not bind the counties.

In ordering the State Board of Equalization to direct the counties to refund the tax monies, the district court judge relied on NRS 361.405.[3] He necessarily determined, without any

---

[3]The pertinent portion of NRS 361.405 provides:

Secretary of state board of equalization to certify changes in

party raising or litigating the issue, that the changes in valuation had less than a substantial effect on tax revenue, NRS 361.405(3)[4]; he then ordered the counties to refund the overpaid taxes without allowing them any opportunity to be heard. This was error. Because the counties were not before the district court, the judgment is not legally enforceable against them. Provident Bank v. Patterson, 390 U.S. 102 (1968). We therefore reverse that part of the lower court's order requiring the State Board of Equalization to require the counties to refund the overpaid taxes to Sierra.

For the above reasons, we affirm that part of the lower court's order finding the Commission's regulations to be invalid on account of its failure to follow the APA notice and hearing requirements; and, reverse that part of the order directing the counties to refund the amount of the overpaid taxes.

GUNDERSON, C. J., and MANOUKIAN and SPRINGER, JJ., and ZENOFF, Sr. J., concur.[5]

---

assessed valuation to county auditors, tax receivers; duties of county auditors, tax receivers.

1. The secretary of the state board of equalization forthwith shall certify any change made by the board in the assessed valuation of any property in whole or in part to the county auditor of the county wherein such property is assessed, and whenever the valuation of any property is raised, the secretary of the state board of equalization shall forward by certified mail to the property owner or owners affected, notice of such increased valuation.

[4]NRS 361.405(3) provides:

3. As soon as changes resulting from cases having less than a substantial effect on tax revenue have been certified to him by the secretary of state board of equalization, the county tax receiver shall adjust the assessment roll or the tax statement or make a tax refund, as directed by the state board of equalization.

[5]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE CAMERON BATJER, Justice. Nev. Const. art. 6, § 19; SCR 10.